Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6623 | **DATE** | 2/8/2002 |
| **CASE TITLE** | Advanced Cleanroom Technologies vs. Richard D. Newhouse and Hunt Construction Group, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Newhouse's and Hunt's Motions for Summary Judgment pursuant to Fed. R. Civ. P. 56

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, Hunt's Motion for Summary Judgment against Advanced Cleanroom Technologies ("ACT") [16-1] is DENIED. Newhouse's Motion for Summary Judgment [20-1] is GRANTED against ACT on behalf of both Hunt and Newhouse on Counts III and V of the first amended complaint. Newhouse's Motion for Summary Judgment against ACT is DENIED on Counts I, II, and IV of the first amended complaint. Further, Defendant Newhouse is ordered to submit an affidavit substantiating the amount of his counterclaim within fourteen (14) days of this order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | **Document Number** |
|---|---|---|---|
| | No notices required. | | |
| | Notices mailed by judge's staff. | FEB 11 2002 | |
| | Notified counsel by telephone. | date docketed | |
| X | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | 02 FEB -8 PM 6:07 | 76 |
| klb (lc) | courtroom deputy's initials | FILED-ED TO Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ADVANCED CLEANROOM ) 
TECHNOLOGIES, a division of JAMES H. )
ANDERSON, INC., an Illinois corporation, )
)
Plaintiff, )
) No. 00 C 6623
v. )
) HONORABLE DAVID H. COAR
RICHARD D. NEWHOUSE, a Michigan )
resident, and HUNT CONSTRUCTION )
GROUP, INC. an Indiana corporation, )
)
Defendants. )

DOCKETED
FEB 11 2002

## MEMORANDUM OPINION AND ORDER

Advanced Cleanroom Technologies ("ACT") brought suit against Richard D. Newhouse ("Newhouse") and Hunt Construction Group, Inc. alleging that Newhouse, while the Director of Sales and Marketing for ACT, improperly shared ACT's confidential pricing information with one of ACT's competitors (Hunt), attempted to undermine ACT's relationship with one of its clients (JDSU), and attempted to steal away ACT's key employees to work for a competitor. According to ACT, within a few days after his resignation from ACT, Newhouse defamed ACT and attempted to steal away the JDSU contract for his new employer, the Hunt Construction Group. Before this Court, is Hunt Construction Group's motion for summary judgment and Newhouse's motion for summary judgment. Hunt Construction Group alleges that summary judgment is proper because Newhouse is an independent contractor, not an employee of Hunt, and thus Hunt can not be held vicariously. Newhouse alleges that summary judgment is proper

-1-



because, inter alia, ACT has not suffered any damages as a result of Newhouse's alleged breach of his fiduciary duties to ACT. For the reasons set forth below, Hunt's motion for summary judgment is DENIED. Newhouse's motion for summary judgment is GRANTED as to Counts III and V on behalf of Newhouse and Hunt and DENIED as to Counts I, II, and IV as there are significant issues of material fact to be decided.

## I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Michael v. St. Joseph County, et. al, 259 F.3d 842, 845 (7th Cir. 2001). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Michael, 259 F.3d at 845; Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001). To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, see Wolf v. Northwest Ind. Symphony Soc'y, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present

definite, competent evidence to rebut the motion, see Albiero, 246 F.3d at 932. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552-53. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250, 106 S. Ct. at 2511.

## II. Factual Background

The following facts are taken from the parties' Local Rule 56.1(a)(3) and (b)(3) Statement of Material Facts. Plaintiff, ACT, a division of James H. Anderson, Inc., an Illinois corporation, has been engaged in the business of designing and constructing cleanroom facilities since 1998. Hunt is an Indiana corporation engaged in the general contracting business for commercial projects, including without limitation, cleanroom facilities. Joan B. Anderson has served as the President and CEO of James H. Anderson since 1993, and is responsible for overseeing all of Anderson's divisions, including ACT. Leonard Deptula serves as the Director of Operations for ACT, and oversees the day to day construction activity for ACT. Leonard Deptula has been continuously employed by ACT from approximately June, 1997 to date. On or about September,

1999, Defendant Newhouse began working with ACT.[1] Newhouse was to solicit and book business for ACT in exchange for a commission.[2]

On June 27, 2000, Joan Anderson, Lenny Deptula, and Scott Stein, attended a meeting at JDSU to discuss the Fab "C" & "D" project and were told that ACT would be awarded the contract.[3] On August 3, 2000, JDSU contacted Deptula at ACT and asked him to revise some of the dates on the proposal. A revised proposal was faxed to JDSU and later that day JDSU notified ACT that it intended to award it the Fab "C" and "D" contract to design and build a cleanroom at its 45 Griffin Road, Bloomfield, Connecticut facility. Between August 4, 2000 and August 11, 2000, Newhouse placed several calls to Deptula and discussed Deptula leaving

---

[1] Plaintiff, ACT, alleges that Newhouse was hired to serve, on an exclusive basis, as its Director of Sales and Marketing. Defendant, Newhouse, claims that he was retained by ACT as an independent contractor and was later given the title Director of Sales and Marketing purely for marketing purposes. Newhouse also maintains that he never served ACT on an exclusive basis and in fact also represented Technical Air Products during the time he represented ACT.

[2] ACT maintains that Newhouse was to receive a commission of 50% of the amount of the final profit margin that exceeds 10% of final contract value. His commission was payable as an advance of 70% of estimated profit at project booking with the commission balance recalculated and payable after receipt of final payment from the client. ACT further states that in the event that the project was less profitable than originally anticipated, and Newhouse received more commission than he was entitled to under the formula, his future commissions were to be aggregated against the overpaid commissions. According to Newhouse, however, he was to be paid a commission based on all booked projects. He was to be paid 100% of his commission as soon as the project was booked and this commission was based on the booked project margin. Thus, there is no dispute that Newhouse was paid by commission but the terms of the commission agreement are contested.

[3] ACT alleges that Lenny Deptula called Newhouse and told him about the Fab "C" and "D" project, and informed him that he was not going to be involved in the project because of the past problems he had with some of JDSU's personnel. Newhouse maintains, however, that he knew about the Fab "C" and "D" project prior to Deptula informing him that ACT had been awarded the project. In fact, according to Newhouse, he was the one who informed ACT of the project and secured it for them.

-4-

ACT.[4] Deptula, however, has not left the employment of ACT despite any efforts allegedly made by Newhouse to solicit him to work for Hunt.

On August 14, 2000, Deptula and Newhouse met with Jim Streeter of Hunt, in Merriville, Indiana. At that meeting, Newhouse informed Deptula and Streeter that he intended to contact Kristen Wells of JDSU.[5] On or about August 15, 2000, Newhouse began working with Hunt.[6] On or about August 20, 2000, Newhouse called Deptula and told him he had set up the previously discussed meeting with Kristen Wells at JDSU for August 21, 2000. On August 20, 2000, Newhouse faxed ACT a letter indicating that he had suspended all sales and marketing efforts on behalf of ACT as of August 18, 2000. In this letter, Newhouse claimed that ACT owed him in excess of $100,000 in commissions. On or about August 23, 2000, Newhouse called Deptula and indicated that he had met with Wells at JDSU.[7] According to ACT, the

---

[4]ACT maintains that Newhouse called Deptula at ACT everyday, at least three times a day, asking him to leave ACT to go to work with him at one of ACT's competitors – the Hunt Construction Group, Inc. Newhouse admits that he phoned Deptula many times, but claims he only spoke with him three or four times. During those conversations, according to Newhouse, Deptula and him discussed, among other things, Deptula's desire to leave ACT.

[5]ACT claims that Newhouse stated that he planned to contact Kristen Wells at JDSU and tell her that ACT was financially incapable of handling the Fab "C" & "D" project. Newhouse, however, maintains that he informed Deptula that it was his intention to contact Kristen Wells of JDSU and ask her if she would re-bid the Fab "C" & "D" project if Hunt purchased ACT.

[6]Hunt maintains that Newhouse was an independent contractor, as evidenced by its contractual agreement with Newhouse to that effect. ACT asserts that the relationship between Hunt and Newhouse was that of employer and employee, respectively.

[7]ACT claims that Newhouse indicated that he had followed through on his plan to obtain the Fab "C" & "D" contract for Hunt by convincing JDSU that ACT was financially incapable of completing the Fab "C" & "D" project. According to ACT, Newhouse admitted to Deptula that he told Wells that ACT was stretched too thin financially to complete the Fab "C" & "D" project, had no other resources, and had no back up plan. Newhouse, on the

alleged defamatory statements were made by Newhouse to Kristen Wells of JDSU at the August 23, 2000 meeting. Nobody was present for this meeting besides Newhouse and Wells. Sometime thereafter, ACT posted a performance bond for the project.[8] It was not, however, the first time ACT had been required to post a performance bond for a project it performed for JDSU. Despite the allegedly improper attempts by Newhouse to secure the JDSU Fab "C" & "D" project for Hunt, JDSU never cancelled its contract with ACT or transferred the project to Hunt. ACT kept the JDSU Fab "C" & "D" project, and has either completed that project or anticipates completing it shortly. Despite the allegedly defamatory statements made by Newhouse to JDSU, ACT has continued to receive additional projects from JDSU.

The claims against Hunt are based solely on its alleged liability under the theory of respondeat superior for the alleged defamatory statements of Defendant Newhouse. Newhouse began working with Hunt on or about August 15, 2000. No one from Hunt was present with Newhouse when he made the alleged defamatory statements. Pursuant to the contract between Hunt and Newhouse, Newhouse does not receive vacation pay, retirement pay, health care or sick pay from Hunt and must provide his own insurance. Further, Hunt does not withhold income tax or other taxes from payments made to Newhouse. Newhouse invoices Hunt for

---

other hand, maintains that he told Deptula that he had told Wells of Hunt's intent to acquire ACT. He denies having told Deptula that he told Wells that ACT was financially incapable of completing the JDSU Fab "C" & "D" project, that ACT was stretched too thin financially to complete the JDSU Fab "C" & "D" project, that ACT had no other resources, or that ACT had no back up plan.

[8]ACT claims that as a result of Newhouse's defamatory remarks to JDSU regarding ACT's financial stability, Wells requested ACT to post a performance bond for the project. Newhouse maintains that the contract signed by JDSU and ACT had an express requirement for the posting of a performance bond.

payment. The contract calls for Newhouse to be paid $11,000 per month. Newhouse's agreement may only be terminated if he is unable to competently provide services or if he breaches the agreement and fails to cure the breach.

Hunt ordered and paid for business cards for Newhouse, listing him as the General Manager for Hunt Advanced Technologies. Hunt provided Newhouse with Hunt Construction Group letterhead and authorized him to sign letters indicating that he was the General Manager of Hunt Advanced Technologies. Hunt's marketing brochure indicates that Newhouse joined Hunt in the summer of 2000 and now serves as the General Manager of Hunt Advanced Technologies. Hunt's brochure was sent to 50 to 60 clients. While working for Hunt, Newhouse was reimbursed for his out of pocket travel expenses, as well as his business development and entertainment expenses. His expenses were reimbursed subject to the approval of Streeter after they were incurred. Hunt also paid Newhouse's cellular telephone bill. As part of Newhouse's contract with Hunt, Hunt agreed to provide Newhouse with a computer, secretarial support, and office supplies. Newhouse spends 95% of his time on Hunt business.

### III. Hunt's Motion for Summary Judgment

Plaintiff claims that Hunt is responsible for the statements made by Newhouse on the grounds that at the time the statements were made, Newhouse was an employee acting within the scope of his employment with Hunt. Hunt maintains, however, that the undisputed facts show that at that time Newhouse was an independent contractor and not Hunt's employee. Thus, according to Hunt, Hunt is not liable because it is well settled law that an employer is not vicariously liable for the torts, including defamation, of their independent contractors. See Anderson v. Marathon Petroleum Co., 801 F.2d 936 (7th Cir. 1986) (generally, a principal is not

liable for an independent contractor's torts even when committed in the performance of the contract and in the furtherance of the principal's business); Lang v. Silva, 306 Ill.App.3d 960, 715 N.E.2d 708, appeal denied by, 186 Ill.2d 570, 723 N.E.2d 1163 (Ill.1999) (one who hires an independent contractor is generally not liable for the negligent or intentional acts or omissions of the contractor).[9]

The issue before this Court is whether Newhouse is an employee or an independent contractor. The question of whether one is an agent or employee or an independent contractor is generally a question of fact. See Lang, 306 Ill.App.3d 960, 972. Where the relationship is clearly undisputed from the facts, however, the question may be decided as a matter of law. Id. at 973. Among the factors to be considered when making the determination are: the right to control the manner in which the work is performed; the right to discharge; the method of payment; whether taxes are deducted from the payment; the level of skill required to perform the work; and the furnishing of the necessary tools, materials, or equipment. Lang, 306 Ill.App.3d at 972; Shoemaker v. Elmhurst-Chicago Stone Co. Inc., 273 Ill. App. 3d 916, 920, 652 N.E.2d 1037, 210 Ill. Dec. 61 (Ill. App. Ct. 1995). No single factor is determinative but the right to control the manner in which the work is performed is considered to be the predominant factor. Lang, 306 Ill.App.3d at 972.

In this case, the underlying facts are disputed and it would be improper for this Court to decide whether Newhouse is an independent contractor or employee as a matter of law. On the one hand, Newhouse executed an agreement with Hunt that termed him an independent contractor and he did not receive any employee benefits from Hunt and was responsible for

---

[9]All parties agree that Illinois law governs.

paying his own taxes. On the other hand, Newhouse spent 95% of his time working on Hunt matters, was given business cards listing him as the General Manager for Hunt Advanced Technologies, used Hunt letterhead, and was listed in Hunt marketing brochures as the General Manager. Viewing the evidence in the light most favorable to the non-moving party (ACT), this Court denies summary judgment because there is a genuine issue of material fact regarding Newhouse's status as an employee or independent contractor.

### IV. Newhouse's Motion for Summary Judgment

Newhouse moves for summary judgment on counts I, II, IV and V against ACT because even if ACT can establish liability on the part of Newhouse (which Newhouse disputes), the uncontroverted evidence establishes that Plaintiff has not suffered any damages. In its response, ACT acknowledged that Count V of its complaint for tortious interference with prospective business advantage should be dismissed because it did not lose the Fab "C" & "D" project as a result of Newhouse's alleged statements. Accordingly, Count V is dismissed. The only damages alleged in the complaint were the performance bond in the amount of $45,460 and punitive damages. In plaintiff's response to Newhouse's motion for summary judgment, ACT presented three carefully crafted affidavits that, it purports, now establish damages that resulted from Newhouse's alleged actions. These damages allegedly result from increased travel time, a loss of productivity, disruption to its work force or instability with its client. Newhouse moves to exclude any evidence of damages that ACT failed to identify in its Fed. R. Civ. P. 26 ("Rule 26") disclosures and in response to Newhouse's discovery requests.

Under Rule 26, ACT was required to make certain disclosures. Specifically, Rule 26(a)(1)(C) states:

(1) Initial Disclosures. Except in categories of proceedings specified in Rule 26(a)(1)(E), or to the extent otherwise stipulated or directed by order, a party must, without awaiting a discovery request, provide to other parties:
\*\*\*
(C) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered;

ACT's disclosure pursuant to Rule 26(a)(1)(C) was limited to the following:

> The plaintiff will seek compensatory and punitive damage for plaintiff's defamation and its resultant loss of reputation. The plaintiff will further request that it be reimbursed for the costs of the bonds it had to secure as a result of defendant's defamatory remarks, and also request that defendant forfeit all compensation and fees allegedly earned for defendant's breach of his fiduciary duty. The plaintiff will ask for damages consistent with the evidence presented at trial.

(ACT's amended Rule 26 disclosures, pp.7-8). ACT did not list any damages whatsoever concerning travel expenses, extra time spent at JDSU by any of its employees, or time spent answering phone calls from Newhouse, despite the fact that this information should have been fully within ACT's knowledge at the time it made its disclosure.

ACT was also specifically asked in interrogatories to identify its damages. ACT provided the following anser to Newhouse's interrogatories:

> 24. Provide a detailed description of the damages allegedly suffered by the Plaintiff as a result of the acts or conduct of the Defendant, including the types and amounts of those damages and state the following:
>     A.    Detail how each item of damage was calculated;
>     B.    Identify each document and each oral communication upon which Plaintiff relies in whole or in part to support each item of damage; and
>     C.    Identify each individual who has personal knowledge of the damages allegedly suffered by Plaintiff.
>
> ANSWER: As a result of the defendant's defamatory statements, the president of JHA had to visit JDSU to allay its fears and plaintiff had to secure a bond for the

> Fab "C" & "D" project. The cost of this bond was $45,460. A copy of this bond was previously forwarded to the defendant. The plaintiff is investigating the additional losses caused by defendant's defamatory statements and reserves the right to supplement this response. Se also plaintiff's Amended Rule 26(a) statement.

Similarly, ACT was also asked to provide any documents it had relating to its damages claim. The only document ACT produced in response to this discovery request was the performance bond it had posted. The specific document request and ACT's answers are as follows:

> 36. All documents supporting any damages claimed by ACT.
>
> ANSWER: See bond documents, Bates Nos. 1-10. Investigation continues.

Likewise, in his deposition, Deptula never said anything about a loss of productivity, disruption of ACT's work force or instability in ACT's relationship with JDSU. To the contrary, Deptula acknowledged that ACT has continued to receive additional projects from JDSU after the alleged defamatory statements.

Prior to the filing of its most recent brief, the only damages identified by ACT was the cost of securing a performance bond for the JDSU Fab "C" & "D" project that resulted from Newhouse's allegedly defamatory statements. Despite numerous opportunities to do so during the discovery period, ACT did not identify any damages resulting from increased travel time, a loss of productivity, disruption to its work force or instability with its client. Rather, ACT makes these allegations for the first time in its brief in opposition to Newhouse's motion for summary judgment. Discovery on this case is now closed and Newhouse has not had the opportunity to question witnesses about these damages, nor has he had the opportunity to view documents which support these claims because none have been produced. There is no justification for ACT's failure to disclose these damages at this late date after discovery has closed and after

-11-

Newhouse has filed his motion for summary judgment on the grounds that Plaintiff has not suffered any damages. Thus, the damage claims not disclosed pursuant to Rule 26 and in response to written discovery requests are excluded.

Newhouse further argues that the cost of securing a performance bond for the JDSU Fab "C" & "D" project does not constitute cognizable damages. According to Newhouse, there is no evidence to prove that ACT was required to post a performance bond because of the acts of Newhouse. Newhouse claims that Anderson volunteered to post the performance bond. ACT claims, however, that the performance bond was not required under the proposal accepted by JDSU and was not requested by JDSU until Newhouse allegedly called into question the financial stability of ACT. Wells stated in her affidavit:

> 7. Prior to Newhouse's comments to me about ACT, ACT was not required to post a bond for the Fab "C" & "D" project.
> 8. In light of Newhouse's comments, however, I had great concern over ACT's financial ability to complete this contract, and told Joan Anderson that I would feel more secure if the project were bonded. She agreed to purchase a bond at ACT's cost.

(Wells Affidavit, ¶¶ 7-8). Construing the facts in the light most favorable to the non-moving party, a genuine issue of material fact exists as to whether ACT was required to post the performance bond or offered it gratuitously. This finding will come down to a credibility determination, which is improper for this Court to make at this juncture.

Newhouse next claims that he is entitled to summary judgment on ACT's claim for defamation/punitive damages (Count III). Under Illinois law, the plaintiff must show that the defendant acted with actual malice to recover punitive damages. Colson v. Stieg, 433 N.E.2d 246, 250 (Ill. 1982). Actual malice exists where a statement is made "with knowledge of its

falsity or in reckless disregard of whether it [is] false or true." Id. In the complaint, plaintiff claimed that the statements were made with reckless disregard for the truth, but such a bare assertion is not sufficient. By Deptula's own admission, ACT does not know whether the statements allegedly made by Newhouse were false. Deptula testified as follows:

> Q. Now, these statements that Mr. Newhouse allegedly made to Kristen Wells, you don't know whether they were true or not, do you?
>
> A. It was him on the phone telling me.
>
> Q. No, I mean, these statements that he told Kristen Wells at his meeting about the company having clash flow problems and having a bad project or two, and those types of things, you don't know whether those statements were true or not?
>
> Mr. Gibbons: Object to the form.
>
> By Mr. Silver:
>
> Q. Is that correct?
>
> A. That's correct.

(Deptula TR-274-275, 14-3). Further, as Newhouse testified, his comments to Wells regarding ACT's cash flow problems were based on several factors, including the fact that (1) he was told by ACT officials that he was not receiving his commission payments in a timely manner because of ACT's cash flow problems; (2) he was told by Deptula that ACT was having problems paying its subcontractors; (3) he was told by Deptula that ACT was stretched too thin by other jobs that did not have enough profit margin which was hurting ACT's ability to pay subcontractors; (4) he was told by ACT employees that ACT was losing money on another project that had gone bad; and (5) he was expressly told by ACT employees that ACT was having cash flow problems.

-13-

(Newhouse TR-94-98, lines 10-20). ACT has not produced any evidence to refute what Newhouse was told by ACT representatives.

ACT makes a conclusory allegation in counts II and III that Newhouse "knew the statements to be false and misleading, or uttered the statements with reckless disregard for the truth, but with knowledge of the danger to plaintiff's reputation." However, there are no specific factual averments set forth to support that claim. Count IV, however, alleges mere negligence based on Newhouse's failure to make a reasonable inquiry into the truth or falsity of the statements he allegedly made to Wells. In its response, ACT states that Newhouse was not privy to ACT's financial situation. That evidence, however, furthers the negligence claim rather than the claim for punitive damages. If Newhouse were privy to the financial situation of ACT and then made false statements that the company was having financial problems, ACT's claim would be viable because Newhouse would have knowledge of falsity. Newhouse, however, was told about the financial situation and did not investigate for himself. He had reason to believe the statements because he had not been paid his commissions. Absent any further allegations of specific facts which would show that the defendant acted with malice, and was not merely negligent, no reasonable juror could infer knowledge of falsity or reckless disregard of the truth from ACT's evidence. Accordingly, summary judgment is granted on the claim for punitive damages (Count III) because viewing the evidence in the light most favorable to the non-moving party (ACT), there are no genuine issues of material fact to be determined at trial.

As punitive damages are not in issue, this Court conclusively finds pursuant to Fed. R. Civ. P. 56(d) that the amount in controversy is $45,460, the amount of the performance bond.[10] Under 28 U.S.C. § 1332(a), $45,460 is not adequate standing alone to meet the amount in controversy requirement. This Court orders the defendant to submit an affidavit as to the amount of his counterclaim within fourteen (14) days of the date of this order to determine if this court has subject matter jurisdiction over this matter or must remand it to the Illinois Circuit Court.[11]

In Newhouse's reply brief, he raises new grounds for summary judgment on the breach of fiduciary duty claim and defamation claim. Specifically, Newhouse now claims that even if a fiduciary duty was owed to ACT, it terminated upon his resignation and he should not be held liable for any later damages. Newhouse also claims that ACT has not provided any evidence that his alleged statements were false. This Court will not consider these grounds as they were not raised in Newhouse's original motion for summary judgment, or in his opening brief. It would be unfair for this Court to consider grounds for the which the plaintiff has not had an opportunity to respond. Accordingly, summary judgment is denied as to Counts I (Breach of Fiduciary Duty),

---

[10]We note that the court possesses jurisdiction over this claim on the basis of the parties' diversity of citizenship. ACT has not plead actual damages in excess of $75,000. Punitive damages may be used in determining the jurisdictional amount when they are available under Illinois law. See Sharp Elec. Corp. v. Copy Plus, Inc., 939 F.2d 513, 515 (7th Cir. 1991). In this case, however, punitive damages are not available because the plaintiff has not shown that the defendant acted with actual malice.

[11]The compulsory counterclaim of a defendant in a diversity action, which claims damages in excess of the jurisdictional amount needed for diversity action, can provide sufficient independent basis for federal jurisdiction even if plaintiff's complaint does not set forth a claim meeting the jurisdictional amount. See Geoffrey E. Macpherson, Ltd. v. Brinecell, Inc., 98 F.3d 1241 (10th Cir. 1996).

II (Defamation / Compensatory Damages), and IV (Defamation/ Negligence) as there is a significant issue of material fact regarding ACT's damages.

## Conclusion

For the foregoing reasons, Hunt's Motion for Summary Judgment against ACT is DENIED. Newhouse's Motion for Summary Judgment is GRANTED against ACT on behalf of both Hunt and Newhouse on Counts III and V of the first amended complaint. Newhouse's Motion for Summary Judgment against ACT is DENIED on Counts I, II, and IV of the first amended complaint. Further, Defendant Newhouse is ordered to submit an affidavit substantiating the amount of his counterclaim within fourteen (14) days of this order.

Enter:

_____
David H. Coar
United States District Judge

Dated: